IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA
CIVIL DIVISION

JOSEPH WEY,

    Plaintiff

vs.                                    Case No.

CITY OF ST. PETERSBURG,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Joseph Wey ("Plaintiff" or "Wey"), by and through the undersigned counsel, hereby sues Defendant City of St. Petersburg ("Defendant" or "the City") and alleges as follows:

### INTRODUCTION

1. This is an action brought pursuant to the Florida Civil Rights Act of 1992, as amended, §760.01 *et seq.*, Fla. Stat. ("FCRA"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101, *et seq.* ("ADA"), and the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq.* ("FLSA").

### JURISDICTION AND VENUE

2. This Court has jurisdiction over these claims as Plaintiff seeks damages in excess of $15,000.00, exclusive of attorneys' fees and costs and all administrative prerequisites have been exhausted or excused.

3. Venue is proper in the Court because all facts material to all claims set forth herein occurred in Pinellas County, Florida.

### PARTIES

4. Wey was and is a resident of Pinellas County, Florida.

5. At all times material to this action, the City of St. Petersburg was a municipal corporation located in Pinellas County, Florida.

6. At all times material to this action, Plaintiff was an employee of Defendant pursuant to the terms of all applicable statutes and Defendant was the employer of Plaintiff pursuant to the terms of all applicable statutes.

## GENERAL ALLEGATIONS

7. Defendant is a city.

8. Plaintiff began working for Defendant in or around January 2007, as a Waste Water Operator.

9. Plaintiff, and other employees, are required or encouraged to report to work in advance of their shift and are permitted to work for 15 minutes before the formal commencement of their shift; however, the work time is then rounded such that the employees are not paid for any of the up to 15 minutes they may have worked.

10. Additionally, time spent working following the formal end of a shift is also rounded in the City's favor.

11. For example, if Plaintiff clocked in at 6:49pm and clocked out at 7:03am, he was compensated as if he worked from 7:00pm to 7:00am, resulting in 14 minutes of unpaid work for the employee for that shift.

12. The City is a covered employer under the FLSA.

13. Plaintiff was paid hourly and did not satisfy any of the exemptions set forth in the FLSA.

14. As Plaintiff generally worked 40 hours or more in a workweek, this additional unpaid overtime should have been compensated at time-and-one-half his regular rate of pay.

15. Plaintiff complained about this unpaid overtime in or around 2013, but no changes were made as a result of this complaint and Plaintiff, and other employees, continued not to be paid for the time spent working prior to the formal start of their shift.

16. On or about July 24, 2015, Wey was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), a condition he has had since childhood.

17. Following his diagnosis, he began a course of treatment which included taking medication.

18. On August 5, 2015, Wey reported his disability to the City by disclosing it to Human Resources, explaining how it affected his communication ability so the City was aware.

19. Prior to the disclosure of his disability, Wey had not received annual reviews.

20. Following his disclosure of this disability, Wey began to receive annual reviews.

21. Similarly situated individuals continued not receiving annual reviews.

22. Following the disclosure of this disability, Wey's work began to be more closely scrutinized than his coworkers and he was subjected to discipline for behavior which did not result in discipline for similarly situated employees.

23. On or about January 27, 2017, Wey complained to Kristen Mory, the Labor Relations and Training Manager in the Human Resources Department, that he was being singled out and treated differently due to his disability.

24. On or about October 4, 2017, Wey was suspended for two days due to an email he sent to the Mayor regarding hurricane pay in which he disclosed that he believed he was being discriminated against due to his disability in violation of the ADA.

25. As further discipline, the City limited Wey's email access so that he could not send to or reply to any City email address.

26. In or around October 2017, Wey was given an annual performance review in which he was rated as "needs improvement" under "Courtesy and Public Relations," indicating that he is "usually polite and courteous" but has "experienced an occasional outburst via email communications to management and other superiors." The review mentions that he "has recognized where he was in his right and where he went overboard" and that he has "put great effort into staying calm and waiting until he is more leveled before answering emails." The review identified three performance improvement goals, all related to "Courtesy": (1) "Professionalism in emails;" (2) "Sign up for Communicating Assertively training through COSP;" and (3) Continue with open communication with his supervisor."

27. In the Employee's Comments sections, Mr. Wey wrote: "I feel this evaluation does not take my ADHD in consideration."

28. This evaluation was signed by Mr. Wey and his supervisor on October 6, 2017 and signed by the Manager and Department Director shortly thereafter. As of this date, Mr. Wey's email usage was already restricted.

29. On or about December 9, 2017, Wey sent an email (using his personal email account due to the restrictions in place on his work email) to Mory complaining that he was being treated differently by his supervisor due to his ADA-protected disability.

30. Wey copied the coworkers who he believed could corroborate his complaint on the email.

31. This email was sent in an effort to start an investigation by Human Resources into his claims of discrimination.

32. The City did not start a Human Resources investigation.

33. Instead, Mory forwarded Wey's complaint to the supervisor whom he alleged discriminated against him and instructed his coworkers not to discuss the matter with him.

34. On or about December 14, 2017, Wey sent another email to Mory, stating his concern about how this was being handled.

35. Upon learning that the City was treating his complaint as an "operational issue related to a shift change" rather than the discrimination complaint it was, he sent another email, objecting to the fact that his supervisor had been informed about the complaint and that Human Resources was not handling the investigation.

36. On or about December 15, 2017, Wey sent another email to Mory, objecting to the dismissal of his complaints by the City without a Human Resources investigation. In that email, Wey states that he will be filing a charge of discrimination with the Equal Employment Opportunity Commission since the City was not conducting an investigation.

37. On or about January 26, 2018, Wey was suspended for three days due to his December 9, 2017 and December 14, 2017 emails.

38. During his suspension, on or about January 26, 2018, Wey sent an email to Charles Wise, the water reclamation manager, and the Tampa Bay Times, stating that the City was in violation of the FLSA due to the work performed prior to the start of their shift.

39. On or about January 27, 2018, he sent an email complaining about the FLSA violation to Mory and his coworkers. He also outlined the discrimination he had faced due to his disability and mentioned his prior email to the newspaper.

40. On January 28, 2018, he replied to an email from Wise stating that he was going to be filing a charge of discrimination.

41. On January 29, 2018, he replied to another email from Wise again complaining about the discrimination he faced.

42. On February 5, 2018, Wey was terminated for the emails he sent between January 26-29, 2019 outlining the discrimination and FLSA violations by the City.

43. Thus, his October 2017 2-day suspension, his January 2018 3-day suspension, and his February 2018 termination were all based on emails in which he complained of unlawful discrimination and/or FLSA violations.

44. The City did not address any of his complaints of discrimination or wage violations, choosing to discipline him for raising these concerns instead.

45. Additionally, Wey was upfront about how his ADHD affected his communication style, yet his communication style is the very thing the City used to justify his discipline and termination.

46. Plaintiff's employment was terminated on or about February 5, 2018 because of Plaintiff's disability and in retaliation for his prior complaints about the City's disability discrimination and wage violations.

47. At all times material to this action, Plaintiff was a qualified individual.

48. At all times material to this action, Plaintiff could perform the essential functions of his job.

49. All administrative notice requirements and prerequisites have been satisfied.

50. Plaintiff has retained the services of the undersigned attorneys and is obligated to pay the undersigned a reasonable fee for their services.

51. Plaintiff demands a trial by jury on all claims alleged herein.

## COUNT I
## FLORIDA CIVIL RIGHTS ACT DISCRIMINATION

52. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 51 as if fully stated herein.

53. Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of his known handicap, and/or because Defendant regarded him as having a handicap, and/or because of Plaintiff's record of having a handicap in violation of the Florida Civil Rights Act.

54. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a) Back pay and benefits;

b) Front pay and benefits;

c) Compensatory damages;

d) Punitive damages;

e) Interest;

f) Reasonable attorney fees and costs; and

g) Any other relief this Court or the jury deems just and equitable.

## COUNT II
## FLORIDA CIVIL RIGHTS ACT RETALIATION

55. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 51 as if fully stated herein.

56. Defendant engaged in unlawful employment practices and retaliated against Plaintiff because he complained about discrimination due to his handicap in violation of the Florida Civil Rights Act.

57. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    h)    Back pay and benefits;

    i)    Front pay and benefits;

    j)    Compensatory damages;

    k)    Punitive damages;

    l)    Interest;

    m)    Reasonable attorney fees and costs; and

    n)    Any other relief this Court or the jury deems just and equitable.

## COUNT III
## AMERICANS WITH DISABILITIES ACT DISCRIMINATION

58. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 51 as if fully stated herein.

59. Defendant engaged in unlawful employment practices and discriminated against Plaintiff's on account of his known disability, and/or because Defendant regarded him as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Americans with Disabilities Act.

60. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a)    Back pay and benefits;

    b)    Front pay and benefits;

    c)    Compensatory damages;

    d)    Punitive damages;

    e)    Interest;

    f)    Reasonable attorney fees and costs; and

    g)    Any other relief this Court or the jury deems just and equitable.

## COUNT IV
## AMERICANS WITH DISABILITIES ACT RETALIATION

61. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 51 as if fully stated herein.

62. Defendant engaged in unlawful employment practices and retaliated against Plaintiff because he complained about discrimination due to his disability in violation of the Florida Civil Rights Act.

63. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a)    Back pay and benefits;

    b)    Front pay and benefits;

    c)    Compensatory damages;

    d)    Punitive damages;

    e)    Interest;

    f)    Reasonable attorney fees and costs; and

    g)    Any other relief this Court or the jury deems just and equitable.

## COUNT V
## FLSA – UNPAID OVERTIME

64. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 51 as if fully stated herein.

65. Defendant's failure to provide Plaintiff's overtime compensation at a rate not less than one and one-half (1 and 1/2) times his regular rate for hours worked over forty (40) in a workweek constitutes a violation of the FLSA, 29 U.S.C. § 207.

66. Defendant's violations of the FLSA were knowing and willful.

WHEREFORE, Plaintiff pray that this Court award the following relief:

a) a judgment that Defendant violated 29 U.S.C. § 207of the Fair Labor Standards Act;

b) damages for the amount of unpaid overtime compensation owed to Plaintiff;

c) liquidated damages, pursuant to 29 U.S.C. § 216(b), in an amount equal to the overtime compensation owed to Plaintiff

d) post-judgment interest, reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); and

e) any other additional relief as the Court deems just and proper.

## COUNT VI
## FLSA RETALIATION

67. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 51 as if fully stated herein.

68. By complaining about not being paid the minimum wage for all hours worked, Plaintiff exercised his right protected by the FLSA.

69. Plaintiff was discharged in retaliation for exercising this right in violation of 29 U.S.C. §215(a).

70. Defendant's violations of the FLSA were knowing and willful.

WHEREFORE, Plaintiff pray that this Court award the following relief:

a) a judgment that Defendant violated 29 U.S.C. §215 of the Fair Labor Standards Act;

b) damages for the amount of backpay owed to Plaintiff;

c) reinstatement and/or front pay;

d) liquidated damages, pursuant to 29 U.S.C. §216(b)

e) post-judgment interest, reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b);

f) compensatory damages; and

g) any other additional relief as the Court deems just and proper.

### REQUEST FOR JURY TRIAL

Plaintiff requests trial by jury on all issues so triable.

Respectfully submitted,

/s/ Michelle Erin Nadeau
**Ryan D. Barack**
Florida Bar No. 0148430
rbarack@employeerights.com
Jackie@employeerights.com
**Michelle Erin Nadeau**
Florida Bar No. 0060396
mnadeau@employeerights.com
Jackie@employeerights.com
**Kwall Barack Nadeau PLLC**
304 S. Belcher Rd., Suite C
Clearwater, Florida 33765

(727) 441-4947
(727) 447-3158 Fax
Attorneys for Plaintiff